KAB

**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Brandon Alexander Boyce,

                Plaintiff,

v.

Emilio Dorame, et al.,

                Defendants.

No.   CV 20-01395-PHX-SPL (MHB)

**ORDER**

Plaintiff Brandon Alexander Boyce, who is currently confined in the Red Rock Correctional Center, brought this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  Defendant moves for summary judgment, and Plaintiff opposes.[1]  (Docs. 24, 28.)

**I.      Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment sexual assault claim against Defendant Dorame, and dismissed the remaining claims and Defendants.  (Doc. 8.)

Defendant now moves for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies.  (Doc. 24.)

///

///

///

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response.  (Doc. 27.)

1   **II.     Legal Standards**

2        **A.     Summary Judgment**

3        A court must grant summary judgment "if the movant shows that there is no genuine

4   dispute as to any material fact and the movant is entitled to judgment as a matter of law."

5   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

6   movant bears the initial responsibility of presenting the basis for its motion and identifying

7   those portions of the record, together with affidavits, if any, that it believes demonstrate

8   the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

9        If the movant fails to carry its initial burden of production, the nonmovant need not

10  produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,

11  1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts

12  to the nonmovant to demonstrate the existence of a factual dispute and that the fact in

13  contention is material, i.e., a fact that might affect the outcome of the suit under the

14  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable

15  jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

16  242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th

17  Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its

18  favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however,

19  it must "come forward with specific facts showing that there is a genuine issue for trial."

20  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal

21  citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

22       At summary judgment, the judge's function is not to weigh the evidence and

23  determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*,

24  477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw

25  all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited

26  materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Exhaustion**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court.  *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005).  The prisoner must complete the administrative review process in accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it.  *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process).  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.  The ultimate burden, however, rests with the defendant.  *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust.  *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion.  *Albino*, 747 F.3d at 1170-71.  But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits.  *Id.* at 1171.

///

///

### III.    Facts[2]

#### A.    The ADC's Grievance Process

Department Order 802 (DO 802), *Inmate Grievance Procedure*, (effective Oct. 16, 2016), governs the inmate grievance procedure, which "is designed to address inmate complaints related to any aspect of institutional life or condition of confinement which directly and personally affects the inmate grievant, including written instructions, procedures, and the actions of the staff." (Doc. 25 ¶¶ 8-9.) Inmates may utilize the Inmate Grievance Procedure regardless of their disciplinary status, housing or classification. (*Id.* ¶ 11.) Unless notified of an extension of time frames, expiration of any time limit for a response at any stage in the process shall entitle the inmate grievant to move to the next step in the process.  (*Id.* ¶ 12.) Extensions at any step shall not exceed 15 workdays.  (*Id.* ¶13.)  If an inmate does not receive a response within the time period specified, his/her time to proceed to the next stage is the same as if he/she had received a response.  (*Id.* ¶ 14.)  The time to proceed to the next stage begins to run the day after a response was due back.  (*Id.* ¶ 15.)  The maximum length of time for completion of the grievance process is 120 days from initiation of the Formal Grievance Process.  (*Id.* ¶ 16.)

Inmates receive a written and oral explanation of the Inmate Grievance Procedure at Reception Centers Intake and as part of the orientation process in any subsequent facility. (*Id.* ¶ 17.)  The first step in the grievance process is for an inmate to attempt to resolve their

---

[2] Although Plaintiff filed a "Statement of Facts," Plaintiff did not file a controverting statement of facts as required by the Court's Local Rules of Civil Procedure and discussed in the Court's *Rand* Order.  Moreover, Plaintiff's Statement of Facts contains many conclusory, irrelevant arguments and many of Plaintiff's argument are unsupported by a Declaration signed under penalty of perjury or other competent evidence supporting Plaintiff's claims.  Because Plaintiff did not file a controverting statement of facts, the Court will consider Defendant's supported facts undisputed unless they are clearly controverted by Plaintiff's non-conclusory first-hand allegations in the verified Complaint, Plaintiff's separate Statement of Facts, or other evidence on the record.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (Where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion.).

complaints through informal means, including, but not limited to, discussion with staff in the area most responsible for the complaint through the submission of an Inmate Informal Complaint Resolution.   (*Id.* ¶ 18.) In the event the complaint is unable to be resolved informally, the inmate may submit an Informal Complaint on an Inmate Informal Complaint Resolution form to the Correctional Officer (CO) III in their respective unit. (*Id.* ¶ 19.)

The Informal Complaint must be submitted within 10 workdays from the date of the action that caused the complaint. (*Id.* ¶ 20.)  The CO III attempts to investigate and resolve the complaint informally, and provides a response within 15 workdays of its receipt.  (*Id.* ¶ 21.)   Inmates may file a Formal Grievance if they are dissatisfied with the Inmate Informal Complaint Response.  (*Id.* ¶ 22.)  If an inmate is unable to resolve a non-medical complaint informally, the inmate may submit a Formal Grievance to the unit CO IV Grievance Coordinator within five workdays from the receipt of a response from the CO III.  (*Id.* ¶ 23.)  An inmate must place only a single complaint on a single Inmate Grievance form.  (*Id.* ¶ 24.)  If the inmate includes multiple, unrelated issues on a single form or submits a duplicate complaint, the submission of the grievance shall be rejected and returned to the inmate as unprocessed.  (*Id.* ¶ 25.)  The inmate shall submit the Inmate Grievance form to the unit CO IV Grievance Coordinator, who then logs and assigns a number to the grievance, using the Unit Coordinator Grievance Log.  (*Id.* ¶ 26.)  Within 15 workdays following the receipt of the formal inmate grievance, the Deputy Warden issues a written response to the inmate.  *(Id.* ¶ 27.)

If the inmate receives an unfavorable response from the Deputy Warden, the inmate may appeal the response to the Director within five workdays of receipt of the Formal Inmate Grievance Response from the Deputy Warden.  (*Id.* ¶ 28.)  The inmate submits the Appeal to the CO IV Grievance Coordinator who logs, processes, and forwards all documents to the Central Office Appeals Officer within five workdays of receiving the Inmate Grievance Appeal from the inmate.  (*Id.* ¶ 29.)  An inmate may not file an appeal to the Director until the grievance procedure within the inmate's assigned unit and

institution has been exhausted.  (*Id.* ¶ 30.)  Within 30 calendar days, the Central Office Appeals Officer prepares a response and submits it to the Director or Director's designee for signature.  (*Id.* ¶ 31.)  The ADC consider the Director's response to be final and to constitute exhaustion of all remedies within the ADC for standard grievances.  (*Id.* ¶ 32.)

## B.   Plaintiff's Housing Assignments and Grievances

Plaintiff was housed at ASPC-Yuma, Dakota Unit from August 29, 2019 to September 30, 2019.  (Doc. 25 ¶ 5.)  Plaintiff was then transferred to the ASPC-Winslow, Kaibab Unit where he was housed from September 30, 2019 until October 3, 2019.  (*Id.* ¶ 6.)  Plaintiff was then transferred to the ASPC-Tucson, Cimarron Unit on October 3, 2019, where he resided until October 8, 2020.  (*Id.* ¶ 7.)

Plaintiff submitted one non-medical grievance while he was housed at Yuma, Dakota Unit between September and November of 2019.  (*Id.* ¶ 40.)  The grievance, submitted on September 27, 2019, references the alleged sexual assault by Defendant Dorame on September 18, 2019. (*Id.*)  The grievance was returned to Plaintiff unprocessed due to Plaintiff's failure to attach proof that he had submitted the required informal complaint documentation.  (*Id.*)  T

The unprocessed September 27, 2019 Formal Grievance states that on September 24, 2019, Plaintiff informed Captain Diaz that he had been sexually assaulted by CO II Emilio Dorame on September 18, 2019 and that two other officers were in the room when he spoke to Diaz, Hearing Officer T. Basaco and CO III Onyeda Jaramillo, and that Captain Diaz failed to respond to his concerns.  (*Id.* ¶ 41.)

Plaintiff was given a memorandum response, dated October 11, 2019, from CO IV Almanza stating the grievance was being returned as unprocessed to Plaintiff because it did not include informal complaint resolution documentation in accordance with Department Order 802.  (*Id.*)  Plaintiff admits that he submitted no other grievances relating to the alleged assault.  (Doc. 28 at 2.)

///

///

## IV.     Discussion

Defendant argues that Plaintiff failed to properly exhaust available administrative remedies.  Defendant has provided evidence that the ADC has a grievance process, and Plaintiff admits that he did not follow the grievance process.  Defendant has met his burden of demonstrating that there was an available grievance process, so the burden shifts to Plaintiff to demonstrate that the grievance process was effectively unavailable.

Plaintiff argues that the grievance process was effectively unavailable because he did not have access to an informal resolution form on September 27, 2019.  Plaintiff argues that on September 27, 2019 when he submitted the "Formal" grievance form, he was only in possession of an "Inmate Letter Form" and the "Formal" grievance form.  (Doc. 28 at 3.)  Plaintiff asserts that he did not want to submit an "Inmate Letter" because Inmate Letter forms do not have carbon copies and Plaintiff would not be able to retain proof that he submitted the Inmate Letter.  Plaintiff asserts that "several" unidentified officers told him that no Inmate Informal Resolution forms were available.  (*Id.*)[3]

Plaintiff made no mention of an inability to obtain an inmate informal resolution form in the Formal Grievance he submitted (Doc. 28 at 26) and also did not mention an inability to obtain forms when he filed the Complaint in this action; rather, in his Complaint, Plaintiff asserted that he submitted a grievance form on September 27, 2019, and did not receive a response.  (Doc. 1 at 3.)

In the Reply in Support of his Motion for Summary Judgment, Defendant argues that Plaintiff has not met his burden of demonstrating that administrative remedies were effectively unavailable to him because Plaintiff's vague, unsworn statements that on September 27, 2019, unidentified officers told him there were no informal complaint

---

[3] Plaintiff also asserts that he was threatened with retaliation on November 24, 2020 after he filed this lawsuit (Doc. 28 at 6), but these allegations are irrelevant to whether Plaintiff was able to exhaust his claim against Defendant prior to filing this lawsuit. Plaintiff also makes allegations about being required to take a photograph more than a year prior to the alleged inability to exhaust and it is unclear how these arguments are related to Plaintiff's inability to exhaust his claims in this action.

resolution forms in the building does not show that the informal complaint resolution form was not available to him.  Defendant points out that Plaintiff fails to provide any actual evidence indicating who he specifically asked to give him the informal complaint resolution form while he was housed at the ASPC Yuma, Dakota Unit, whether the official or officers were the only source to receive an informal complaint resolution, or whether he made any additional attempts to obtain an informal complaint resolution form, such as sending an inmate letter.  Defendant further asserts that Plaintiff does not provide any evidence or argument to indicate whether he asked for and was denied a copy of the informal complaint resolution form when he was transferred to the ASPC-Winslow, Kaibab Unit even though when Plaintiff was transferred to ASPC-Winslow, Kaibab Unit on September 30, 2019, he would still have been within the timeframe to submit an informal complaint resolution, which provides an inmate with ten workdays to submit an informal complaint resolution.

Defendant further asserts that even if the informal complaint resolution was not made available to Plaintiff, that does not mean the administrative procedures under DO 802 were unavailable to Plaintiff because when he submitted his Formal Grievance Form on September 27, 2019, Plaintiff did not explain that he did not have access to an informal complaint resolution form and that the submission of the "Formal Grievance" was his attempt to comply with policy and submit his informal complaint.  Defendant asserts that because Plaintiff submitted a "Formal Grievance," without indicating or providing any documentation to show that he had complied with the first step of the grievance procedure, his grievance went unprocessed on October 11, 2019.  Defendant asserts that Plaintiff could have still complied with DO 802 by proceeding to the next step of the grievance procedure and filing an Inmate Grievance Appeal explaining his inability to obtain an informal resolution form or he could have submitted an informal complaint resolution form at the ASPC-Tucson, Cimarron Unit, which is where he was housed at the time the grievance, went unprocessed.

///

Defendant asserts that DO 802 also allows Plaintiff to explain "extenuating circumstances" if a grievance is submitted out of timeframes, but Plaintiff made no attempt to explain such circumstances.

The Court agrees that Plaintiff has not met his burden of demonstrating that the grievance process was effectively unavailable to him. Plaintiff only includes facts about not being able to obtain a form on one day in one unit and does not explain why he could not obtain the form in another unit or whether the form was available to him when the grievance was returned to him unprocessed, but he was still within timeframes to submit an informal complaint resolution.

Moreover, Plaintiff's assertions that he could not obtain the form in the first place are unsupported by any facts or evidence. Plaintiff does not name the officers who allegedly told him forms were unavailable, does not explain why he did not explain on the formal resolution form that he could not obtain an informal resolution form, and states that although he had Inmate Letter forms that he could have used to request informal resolution forms, he did not want to use the Inmate Letter forms because he could not retain carbon copies of them. Moreover, Plaintiff made no reference to an inability to obtain an informal resolution form when asked to explain why he could not grieve in his Complaint. Accordingly, Plaintiff has failed to produce any specific facts or evidence from which the Court could conclude that the ADC's grievance process was effectively unavailable to him either during the timeframe in which he could have filed an inmate informal grievance or thereafter. *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

For all of the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. Accordingly,

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 24).

1      (2)      Defendant's Motion for Summary Judgment (Doc. 24) is **granted**, and the

2  action is **dismissed without prejudice** for failure to properly exhaust available

3  administrative remedies.  The Clerk of Court must enter judgment accordingly.

4      Dated this 9th day of March, 2022.

5

6                                                    Honorable Steven P. Logan
7                                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28